UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

JOHN DUFFY,

                       Plaintiff,

            -v-

ANDREA EVANS, *Chairperson, New York State Division of Parole*,

                   Defendant.

------------------------------------------------------------------X

11 Civ. 7605 (JMF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/12

JESSE M. FURMAN, United States District Judge:

      Plaintiff John Duffy, a New York State prisoner who is proceeding *pro se*, brings this action against Andrea Evans, Chairperson of the New York State Board of Parole (the "Board"), pursuant to Title 42, United States Code, Section 1983, alleging that his constitutional rights were violated when the New York State Division of Parole repeatedly denied his application for parole release. Specifically, the complaint, filed on October 26, 2011, includes nine causes of action for alleged deprivation of Duffy's rights to procedural and substantive due process, free speech, and equal protection. Plaintiff seeks declaratory and injunctive relief, including expungement of any false information in his parole file and a *de novo* hearing before the Board. (Compl. ¶ 38). Defendant Evans now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety. (Docket No. 14). For the reasons stated below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

On a motion to dismiss, a court may consider facts stated in the complaint, any documents attached to the complaint, and any documents incorporated by reference into the complaint. *See, e.g.*, *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Accordingly, the following facts are taken from the complaint and from documents attached to and referenced therein, and are assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff Duffy is a New York State prison inmate currently incarcerated at the Hudson Correctional Facility in Hudson, New York. (Compl. ¶ 1). At all times relevant to this action, Plaintiff was incarcerated at the Arthur Kill Correctional Facility in Staten Island, New York, and the Mid-Orange Correctional Center, located in Orange County, New York. (*Id.* ¶ 2). In 1981, Plaintiff Duffy was convicted of murder in the second degree for the 1979 stabbing of James Connelly and was sentenced to an indeterminate term of imprisonment of twenty years to life. (*Id.* ¶ 4). Duffy became eligible for parole after he served his minimum sentence and appeared before the Board for the first time in 2001, at which point his application for parole was denied. Since 2001, Plaintiff has appeared before the Board five additional times. Each time the Board has denied his application for parole and recommended that he apply again in two years, the maximum allowed interval under N.Y. Executive Law § 259-i(2)(a). (*Id.* ¶ 2).[1]

After he was denied parole in 2005, Duffy commenced an Article 78 proceeding under the New York Civil Practice Law and Rules, N.Y. C.P.L.R. 7801, *et seq.* (McKinney 2011), challenging the Board's denial of his application. (Biesty Decl. Ex. A). In the state court

---

[1] Duffy appeared before the Board in 2001, 2003, 2005, 2007, 2009, and most recently on July 20, 2011. (Compl. ¶ 4).

proceeding, Duffy challenged the Board's decision to deny him parole on a number of grounds, including that the Board improperly considered victim impact statements that contained false information about him.  (*See id.*).  In an opinion dated July 12, 2006, Justice Robert A. Sackett of the Supreme Court of New York, County of Albany, dismissed the proceeding, finding no support in the record for Duffy's claims.  (*Id.*).

Duffy next went before the Board in 2007, and once again was denied parole.  (Compl. ¶ 2).  Thereafter, Plaintiff filed an Article 78 proceeding in Kings County Supreme Court in which he challenged the Board's failure to consider the minutes of his sentencing proceeding, which could not be located prior to his hearing.  (Compl. Ex. K).  Justice Arthur M. Schack granted Plaintiff's petition in a decision and order dated May 26, 2009, and ordered the Board to hold a *de novo* parole hearing at which it was required to afford Duffy "a favorable inference as to the sentencing recommendation of his trial judge."  (*Id.*).  The Division of Parole appealed this order to the Appellate Division, Second Department, which reversed Justice Schack's order, holding that "[i]n the absence of any indication that the unavailable sentencing minutes contained any recommendation as to parole, the failure of the Board to obtain and consider those minutes did not prejudice Duffy."  (Compl. Ex. L).

In July 2009, Duffy went before the Board again, and once more was denied parole. (Compl. ¶ 2).  According to the complaint, in November 2009, Duffy discovered a book written by James Connelly's sister, in which she described her efforts to have Duffy's parole applications denied.  (*Id.* ¶ 4).  The book contained victim impact statements that Connelly's sister allegedly submitted to the Division of Parole, dated 2001, which stated that Duffy had (1) assaulted a woman while on bail; (2) attacked a member of the victim's family during his criminal trial; and (3) threatened the victim's family.  (*Id.*).  By letter dated November 16, 2009,

Duffy filed a complaint with Defendant Evans concerning these victim impact statements, asserting that they contained false and fabricated information and should not have been included in his file.  (Compl. Ex. C).  According to the complaint, the Division of Parole never responded to this letter.  (Compl. ¶ 9).  Duffy then commenced a third Article 78 proceeding in Orange County Supreme Court, alleging that the New York Division of Parole improperly and unlawfully relied upon "false and erroneous information" contained in those statements when considering Duffy's parole application.  (Compl. Ex. F).  By order dated September 21, 2010, Justice Robert A. Onofry denied the application, stating that "[s]ince victim impact statements are tendered under a promise of confidentiality, and since the Board, at its discretion, can consider additional submissions which contain out of court allegations, Petitioners [sic] request to expunge these documents from his parole filed [sic] must be denied as legally unsupportable." (*Id.* (citations and internal quotation marks omitted)).

On July 20, 2011, Duffy appeared before the Board once more — his sixth time in ten years.  At the 2011 hearing, the Board noted that Duffy disputed some information provided by the victim's family contained in his parole file.  (Compl. ¶ 10).  The Board also questioned Duffy about his past behavior and future plans.  (Compl. Ex. D at 9-11, 13).  At some point, the Board completed a pre-printed form titled "New York State – Board of Parole – Commissioner's Worksheet."  (Compl. Ex. E).  Duffy's name and identification number were handwritten at the top of the form.  (*Id.*).  Just below Duffy's name, in a section of the form captioned "PAROLE DECISIONS," the Board checked the box labeled "DENIED" and indicated that Duffy's next appearance would be in July 2013.  (*Id.*).

The form also includes the following typed statement:

CONDITIONS OF RELEASE / REASONS FOR DENIAL

Parole is denied.  After a careful review of your record, a personal interview, and due deliberation, it is the determination of this panel that, if released at this time, there is a reasonable probability that you would not live at liberty without violating the law, and your release at this time is incompatible with the welfare and safety of the community and would so deprecate the seriousness of the crime as to show disrespect for the law [sic]

This decision is based on the following: You stand convicted of the following serious offense

(*Id.*).  Following that typed statement, the following is written by hand:

of murder 2 in which you caused the death of a 15 year old male by repeatedly stabbing him in the neck and chest.  This was a heinous crime.  It was completely senseless and has probably ruined the lives of many people.  After it occurred, you ran and became a fugitive for about 18 months.  This crime shows a complete lack of regard for human life.

(*Id.*).  The handwritten passage also contains two crossed-out sentences, which appear to state that Duffy "claim[s] the victim's family is making false statements about [him]."  (*Id.*).  Finally, just below the hand-written text appears the following typed sentence: "Consideration has been given to your program completion and satisfactory behavior, however your release at this time is denied."  (*Id.*).

Consistent with the Worksheet, the Board determined that Duffy was not yet suitable for parole.  The Board's written Decision Notice, dated July 21, 2011, included an explanation of the denial that was nearly identical to the text on the Worksheet.  (Compl. Ex. J).  Among other things, the Board explained that it based its decision on the "heinous" nature of Duffy's crime, which was "completely senseless and has probably ruined the lives of many people."  (*Id.*).  The Board also noted that after the 1979 crime, Duffy "ran and became a fugitive for about 18 months."  (*Id.*).  The Board concluded that "if released at this time, there is a reasonable

5

probability that [Duffy] would not live at liberty without violating the law, and [Duffy's] release

at this time is incompatible with the welfare and safety of the community and would so deprecate

the seriousness of the crime as to show disrespect for the law." (*Id.*).

Plaintiff commenced this action on October 26, 2011.  (Docket No. 2).

## DISCUSSION

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive a

Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff

must allege sufficient facts to show "more than a sheer possibility that a defendant acted

unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, if the

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the]

complaint must be dismissed." *Id.* at 570.

Plaintiff is proceeding *pro se*.  Therefore, his submission should be held "to less stringent

standards than formal pleadings drafted by lawyers . . . ." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

(quotations and citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)

(stating that a court is "obligated to construe a *pro se* complaint liberally").  Nevertheless, *pro se*

plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6)

is proper if the complaint lacks an allegation regarding an element necessary to obtain relief."

*Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's

Federal Practice § 12.34 [4][a], at 12-72.7 (2005)).  Thus, the "'duty to liberally construe a

plaintiff's complaint [is not] the equivalent of a duty to re-write it.'"  *Id.* (quoting 2 Moore's

Federal Practice § 12.34[1] [b], at 12-61); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500,

503 (S.D.N.Y. 2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to

establish" that defendants violated his constitutional rights).

## A.  New York State's Parole System

New York's parole system is administered by the Board of Parole.  *See* N.Y. EXEC. LAW

§§ 259, 259-b.  The Board's authority to grant parole release is governed by Executive Law

§ 259-i, which states, in relevant part:

> Discretionary release on parole shall not be granted merely as a reward for good
> conduct or efficient performance of duties while confined but after considering if
> there is a reasonable probability that, if such inmate is released, he will live and
> remain at liberty without violating the law, and that his release is not incompatible
> with the welfare of society and will not so deprecate the seriousness of his crime
> as to undermine respect for law.  In making the parole release decision, the
> guidelines . . . shall require that the following be considered: (i) the institutional
> record including program goals and accomplishments, academic achievements,
> vocational education, training or work assignments, therapy and interpersonal
> relationships with staff and inmates; (ii) performance, if any, as a participant in a
> temporary release program; (iii) release plans including community resources,
> employment, education and training and support services available to the inmate;
> (iv) [issues related to deportation]; and (v) any statement made to the board by the
> crime victim or the victim's representative . . . .

*Id.* § 259-i(2)(c)(A).  "While consideration of these guidelines is mandatory, the ultimate

decision to parole a prisoner is discretionary."  *Graziano v. Pataki*, 689 F.3d 110, 113 (2d Cir.

2012) (per curiam) (quoting *Silmon v. Travis*, 95 N.Y.2d 470, 477 (2000)).  Moreover, although

the Board "must provide the inmate with a proper hearing in which only the relevant guidelines

are considered," it "need not expressly discuss each of these guidelines in its determination." *Id.* (quoting *King v. N.Y. State Div. of Parole*, 83 N.Y.2d 788, 791 (1994)).[2]

## B. The Claims Related to Denial of Parole Prior to 2009 Are Time Barred

As an initial matter, Duffy's claims related to his parole determinations in 2001, 2003, 2005, 2007, as well as all other claims that accrued prior October 26, 2008, are time barred. The statute of limitations for Section 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York, this time period is three years, *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004), and begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action," *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted); *see also Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").

---

[2] Duffy's complaint names only Evans as a defendant and seeks only declaratory and injunctive relief. In his opposition papers, however, Duffy sometimes states that Evans and the Board of Parole should be held liable to him. (*See* Pl.'s Aff. in Opp'n to Def.'s Mot. to Dismiss ¶ 10). Putting aside the fact that a complaint cannot be amended through papers opposing a motion to dismiss, any claim for damages against Evans would be subject to dismissal because Duffy has not alleged her personal involvement in the constitutional violations, *compare Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that the personal involvement of a defendant in the alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983), *with Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) ("Personal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983.") (citation omitted), and any claim against the Board would be subject to dismissal under the Eleventh Amendment, *see, e.g.*, *Stone v. N.Y.C. Dep't of Homeless Servs.*, 159 Fed. App'x 324, 325 (2d Cir. 2005) (dismissing Section 1983 claim against the New York State Division of Parole because it is barred by the Eleventh Amendment); *Heba v. N.Y. State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007) (same); *Villalobos v. N.Y. Div. of Parole*, No. 09 Civ. 8431 (WHP), 2010 WL 3528926, at *2 (S.D.N.Y. Aug 23, 2010) (dismissing Section 1983 claim against the New York Parole Board because it is barred by the Eleventh Amendment).

Duffy asserts that each of his six interviews before the Board were tainted by false information contained in his parole file. Yet Duffy was aware of this allegedly false information as early as 2006; indeed, in 2006 he challenged the information in a New York Article 78 proceeding. (*See* Biesty Decl. Ex. A). Even if Duffy was not aware of the full extent of the allegedly false information contained in his file, his claims accrued for statute of limitations purposes no later than 2006, and thereafter each time he was denied parole. *See Wallace*, 549 U.S. at 391 ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable."). For similar reasons, Plaintiff's equal protection claims related to receiving the denial of parole immediately after the 2003 hearing (Compl. ¶¶ 14-15) and being handcuffed in front of the Board (*id.* ¶¶ 16, 31), are barred by the statute of limitations. As Duffy did not commence this action until October 26, 2011, and has not established any basis for equitable tolling of the statute of limitations, any claim related to the Board's actions prior to October 26, 2008, is time barred and must be dismissed in its entirety.

Duffy's claims based on the Board's failure to consider Duffy's sentencing minutes in his parole board hearings in 2001, 2003, 2005, and 2007 (*see* Compl. ¶¶ 32-34) are also time barred, as Duffy was aware of the alleged injury issue as early as 2007. *See Matter of Duffy v. N.Y.S. Div. of Parole*, 74 A.D.3d 965, 965-66 (N.Y. 2d Dep't 2010) (noting that Plaintiff challenged the Board's 2007 denial of parole on grounds that the Board did not consider his sentencing minutes). Further, even if this claim were not barred by the statute of limitations, it would fail, as courts have consistently held that the Board's failure to consider a prisoner's sentencing minutes does not amount to a constitutional violation. *See, e.g.*, *Villalobos*, 2010 WL 3528926,

at *3 (stating "the Parole Board's failure, refusal, or inability to consider [a prisoner's]

sentencing minutes does not violate constitutional due process rights").[3]

## C.  The Claims Related to the 2009 and 2011 Parole Determinations

That leaves Duffy's claims with respect to the 2009 and 2011 denials of parole.  Plaintiff

alleges that his constitutional rights to procedural and substantive due process, free speech, and

equal protection were violated when the Board repeatedly denied his application for parole

release.

### 1.  The Due Process Claims

Broadly construed, Plaintiff makes two allegations regarding the violation of his due

process rights at the 2009 and 2011 parole determinations: first, that his due process rights were

violated because inaccurate information was contained in his parole file; and second, that the

Board violated his due process rights by acting arbitrarily and capriciously in denying his parole

application.  The Court will address each allegation in turn.

#### a.  Right to Have Victim Impact Statements Expunged from File

Insofar as Duffy alleges that his due process rights were violated by the Board's failure to

expunge inaccurate information from his prison file, this claim fails.  As an initial matter, it is not

even clear that a prisoner has a constitutional right to have incorrect information relied upon in a

parole hearing expunged from his or her file.  *See, e.g.*, *Watts v. Pataki*, NO. 9:08-CV-92, 2010

WL 2925725, at *3 (N.D.N.Y. Jul 20, 2010) (noting that the Second Circuit has not recognized

the right of a prisoner to have incorrect information expunged from his prison file); *Hall v.*

*Marshall*, 479 F. Supp. 2d 304, 315 n.4 (E.D.N.Y. 2007) (same).  But even if Duffy had a limited

---

[3]        Defendant argues also that Duffy's claim related to the sentencing minutes is precluded
by the state court's rejection of a similar claim.  (Def.'s Mem. of Law in Supp. of Mot. to
Dismiss 14-15; Def.'s Reply Mem. of Law in Supp. of Mot. to Dismiss 1, 6).  The Court need
not reach those arguments.

constitutional right to have incorrect information expunged from his file, his claim would fail for two reasons.  First, conclusory assertions aside, Duffy fails to allege in a plausible way that the Board actually relied on the allegedly false information.  (*See, e.g.*, Compl. ¶¶ 10, 24; *see also* Def.'s Mem. of Law in Supp. of Mot. to Dismiss 7-8).  Second, "when the alleged false information did not originate with the defendant, but was received from a third party, the defendant is not responsible for any alleged 'constitutional injury' and the claim must be dismissed."  *LaBounty v. Coombe*, No. 95 Civ. 5592 (MBM), 1999 WL 177438, at *3 (S.D.N.Y. Mar. 30, 1999), *aff'd*, 208 F.3d 203, 203 (2d Cir. 2000) ("Even if we were to adopt a limited right to an accurate criminal file, we refuse to extend this right to information that comes from third parties and that has not been demonstrated to be inaccurate, such as the information in this case."); *see also Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980).

Here, Plaintiff's complaint challenges information derived from external sources — from the victim impact statements submitted by James Connelly's sister and from statements allegedly made by public officials (unrelated to the Board).  (*See* Compl. ¶ 4; Pl.'s Aff. in Opp'n to Def's Mot. to Dismiss ¶ 5).  Because the Board had "every right to rely on this information" — indeed, it was *required* to consider the victim impact statements, *see* N.Y EXEC. LAW § 259-i(2)(c)(A) — Defendant's refusal to expunge this information has not caused Plaintiff a "constitutional injury." *LaBounty*, 1999 WL 177438, at *3; *see also Krebs v. N.Y.S. Div. of Parole*, No. 9:08–CV–255 (NAM/DEP), 2009 WL 2567779, at *12 (N.D.N.Y. Aug. 17, 2009) (holding that "adverse public and political pressure . . . are permissible factors which parole officials may properly consider as they relate to whether release is not incompatible with the welfare of society and will not so

deprecate the seriousness of the offense as to undermine respect for the law") (internal quotation marks and citation omitted).  Accordingly, this claim is dismissed.[4]

### b.  Denial of Parole

Duffy also challenges the Board's denial of his parole application in 2009 and 2011. Specifically, Duffy alleges that the Board acted in an arbitrary and capricious manner in denying him parole because (1) the Board intentionally ignored its statutory duty to take into consideration all of the statutorily mandated factors and instead relied solely on the nature of his underlying crime, thereby relying on the same factors that the sentencing court took into consideration; (2) the Board provided no explanation to support its determination that granting Duffy parole would be inappropriate and issued a decision in 2011 that was "boilerplate," crafted in "conclusionary terms" without a "meaningful statement of the reasons supporting the denial"; and (3) the Board had predetermined the outcome of his application, prior to his hearing.

In order to state a claim for violation of his due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *See, e.g.*, *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  The Supreme Court had held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  To trigger a protectable liberty interest, an inmate "must have a

---

[4]      In his opposition to Defendant's motion to dismiss, (Docket No. 22), Duffy argues that if information in an agency's file is capable of verification, then pursuant to the Privacy Act, 5 U.S.C.A. §552, *et seq.*, the agency must take "reasonable steps to maintain accuracy of information . . . ."  (Pl.'s Mem. of Law in Opp'n to Def's Mot. to Dismiss ¶ 4).  The Privacy Act does not apply, however, to the conduct of state agencies.  *See Lampkin v. N.Y.C. Dep't of Probation*, No. 00 Civ. 7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001) (dismissing a Privacy Act claim because the Privacy Act "concerns itself exclusively with the manner in which federal institutions conduct themselves and has no bearing on the instant case, which challenges the conduct of state agencies and officials"); *accord Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp. 2d 439, 440 (S.D.N.Y. 2000), *aff'd*, 12 Fed. App'x 33 (2d Cir. 2001).

legitimate expectancy of release that is grounded in the state's statutory scheme," rather than a "mere possibility of release." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (per curium). The Second Circuit has concluded that the New York State parole statute "is not one that creates in any prisoner a legitimate expectancy of release." *Id.* at 171.  Therefore, because under New York's statutory scheme Plaintiff does not have a legitimate expectancy of release, Duffy does not have a liberty interest in parole that is protected by the Due Process Clause. *See id.* (citing *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979)); *see also Hamilton v. N.Y.C. Mun.*, No. 9:11-CV-0348 (DNH/DEP), 2012 WL 398819, at *8 (N.D.N.Y. Jan 10, 2012).

Even though prisoners in New York State have no liberty interest in parole, district courts in the Second Circuit have held they do have a limited due process right not to be denied parole arbitrarily or capriciously, or on the basis of a protected classification (such as race, religion, or gender) or an irrational distinction.  *See, e.g.*, *Boddie v. N.Y.S. Div. of Parole*, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003); *Standley v. Dennison*, No. 9:05-CV-1033 (GLS/GHL), 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007) (collecting cases); *Romer v. Travis*, No. 03 Civ. 1670 (KMW) (AJP), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) (holding that because "'[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release . . . [a prisoner] can claim a due process violation only if the Parole Board has denied his release arbitrarily or capriciously") (internal quotation marks omitted); *West v. Alexander*, No. 07-cv-2098 (ARR) (LB), 2009 WL 5172960, at *6 (E.D.N.Y. Dec. 30, 2009) (noting that "an inmate's due process rights are violated when the Parole Board denies release arbitrarily or capriciously") (internal quotation marks omitted).[5]  "[O]nly the most egregious official conduct,"

---

[5]      Some district courts have held that the absence of a constitutionally protected liberty interest is the end of the due process inquiry. *See, e.g.*, *Gordon v. Alexander*, 592 F. Supp. 2d 644, 653 (S.D.N.Y. 2009) ("Where no process at all is required, the government decision-maker

however, "can be said to be 'arbitrary in the constitutional sense.'" *Graziano*, 689 F.3d at 116 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Here, Duffy makes a number of allegations as to why the Board did not comply with its own statutory and regulatory guidelines in denying his parole application. First, Duffy alleges that the Board intentionally ignored its duty to take into consideration all of the statutorily mandated factors and instead relied solely on the nature of his underlying crime. (Compl. Claim III). This conduct, Duffy alleges, was an abuse of discretion and was "irrational, arbitrary, capricious, unlawful and violat[ed] plaintiff's constitutional rights." (*Id.*). As noted above, New York Executive Law § 259-i lists a number of factors that the Board must consider in a parole determination. As the statute does not specify how much weight to be accorded to each factor, the "Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." *Manley v. Thomas*, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003) (citing *Garcia v. N.Y.S. Div. of Parole*, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997)). Furthermore, the "law does not forbid the Board from deciding that the seriousness of an offense and a prisoner's institutional record outweigh [other criteria]." *Salahuddin v. Unger*, No. 04 CV 2180 (JG), 2005 WL 2122594, at *6 (E.D.N.Y. Sept. 2, 2005); *see also Brown v. Thomas*, No. 02 Civ. 9257 (GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003) (stating that "the [Parole] Board was fully entitled to determine that the nature of the crime outweighed the positive aspects of [petitioner's] record"); *Pacheco v. Pataki*, No. 9:07–CV–0850 (FJS/GHL), 2010 WL 3155810, at *3 (N.D.N.Y. May 5, 2010) ("The vast majority of the courts

---

may use absolute discretion — even the discretion to render decisions on arbitrary or irrational bases —without violating constitutional due process requirements"). The Second Circuit, however, has not adopted that view and has analyzed claims like Duffy's here using the arbitrary-and-irrational standard. *See, e.g.*, *Graziano*, 689 F.3d at 115 (citing cases). In any event, Defendant here has waived any argument against applying that standard.

in the Second Circuit that have considered this issue have held that parole denials based solely on the severity of the prisoner's commitment offense are not arbitrary, capricious, or based on an irrational distinction.").

Here, the Board considered Duffy's (1) community service while incarcerated (Compl. Ex. D at 9); (2) disciplinary record (*id.* at 9-10); (3) planned post-release living arrangements (*id.* at 10); (4) letters of support (*id.* at 11-12); and (5) post-release employment opportunities (*id.* at 13), but ultimately determined that the "heinous" nature of the crime and Duffy's status as a fugitive "shows a complete lack of regard for human life." (Compl. Ex. J). Because it was within the discretion of the Board to consider these factors, Duffy has not stated a due process claim on these grounds. *See Brown v. Thomas*, No. 02 Civ. 9257 (GEL), 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003) (holding that where the Board "considered the relevant statutory factors, including petitioner's record in prison and postrelease plans, before concluding in its discretion that, due to the serious and violent nature of the crime and petitioner's other violent conduct, petitioner is not an acceptable candidate for release on parole,' reliance on the nature of the inmate's crime to deny parole is entirely consistent with the criteria laid down by the legislature"); *Graziano v. Pataki*, No. 06 Civ. 0408 (CLB), 2006 WL 2023082, at *8 (S.D.N.Y. July 17, 2006) ("[W]here a Board has properly considered statutory guidelines, it may . . . deny parole where it determines upon fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors.").

Duffy also alleges that the Board used factors to deny him parole that the sentencing court took into consideration, thereby "illegally re-sentenc[ing] plaintiff." (Compl. ¶¶ 21-22; Claim III; Compl. ¶ 29, Claim VII). Plaintiff seems to be claiming that by denying him parole based upon the "heinous" nature of his original crime, the Board violated the Double Jeopardy

Clause of the Fifth Amendment to the United States Constitution.  The Second Circuit, however, has held that "[t]he Double Jeopardy Clause applies to judicial proceedings, not parole."  *Priore v. Nelson*, 626 F.2d 211, 217 (2d Cir. 1980); *see also Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983) ("A denial of parole is a decision to withhold early release from the confinement component of a sentence.  It is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause . . . .").  Accordingly, Plaintiff has not sufficiently stated a claim on the grounds that the Board relied on the same factors as the sentencing court.

Duffy alleges as well that the Board acted in an arbitrary and capricious manner by providing no explanation to support its determination that granting Duffy parole would be inappropriate.  He asserts that the Board's decision is not supported by any facts, does not contain a "meaningful" statement of the reasons supporting the denial, and is "boiler plate," crafted in "conclusory terms" with "pro-forma language."  (Compl. ¶ 28).  A review of the Board's decision (*see* Compl. Ex. J), however, belies this claim.  In its decision following the parole hearing, the Board advised Duffy of its reasons to deny him parole, including concerns for community safety, the heinous nature of his crime, and the fact that his release "would so deprecate the seriousness of the crime as to show disrespect for the law."  (*Id.*).  Such an explanation, especially coupled with the additional considerations that the Board made during the hearing (*see* Compl. Ex. D at 9-11, 13), is more than sufficient to comply with the mandates of due process.  *See Gittens v. Thomas*, No. 02 Civ. 9435 (JSM), 2003 WL 21277151, at *2 (S.D.N.Y. May 30, 1993) ("[D]ue process does not require the courts to reexamine the factual determinations of the Board."); *Duemmel v. Fischer*, 368 Fed. App'x 180, 182 (2d Cir. 2010) ("[N]othing in the due process concepts as they have thus far evolved . . . requires the Parole

Board to specify the particular 'evidence' . . . on which it rests the discretionary determination that an inmate is not ready for conditional release."); *Schwartz v. Dennison*, 518 F. Supp. 2d 560, 573 (S.D.N.Y. 2007) (holding that due process requires only that the Board state "in what respects [the prisoner] falls short of qualifying for parole, not as an evidentiary prerequisite, but rather as a guide to the inmate for his future behavior") (internal quotation marks omitted).

Finally, Duffy alleges that the Board had predetermined the outcome of his parole hearing in 2011. Defendant does not dispute that the guarantee against arbitrary and irrational government action includes a right to a hearing before a fact-finder that has not predetermined the outcome of the hearing. *See, e.g.*, *Withrow v. Larkin*, 421 U.S. 35 (1975) (holding that "a fair trial in a fair tribunal is a basic requirement of due process," and this rule "applies to administrative agencies which adjudicate as well as to courts"); *Edwards v. Balisok*, 520 U.S. 641 (1997) (recognizing due process claim based on allegations that prison disciplinary hearing officer was biased and would suppress evidence of innocence); *Bakalis v. Golembeski*, 35 F.3d 318, 326 (7th Cir. 1994) (holding that a decision-making body "that has prejudged the outcome cannot render a decision that comports with due process"); *cf. Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) ("Since the touchstone of the right of due process is freedom from arbitrary governmental action, it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right."). Thus, the sole question here is whether the complaint plausibly alleges that the Board predetermined Duffy's parole decision.

It does. That is because, as Duffy notes, a portion of the Commissioner's Worksheet that was completed by the Board during the parole hearing — most notably, the portion that begins "Parole is denied" — is typewritten and, according to the complaint, the Board did not have a typewriter or computer at the hearing. (Compl. ¶¶ 24-26; Compl. Ex. E). It may be that the

typewritten portion is part of some pre-printed form that is not specific to Duffy, and that the Board used it only after deciding to deny parole and filled in the blank space by hand accordingly.  But that is not self evident from the form itself as, among other things, the crucial portion of the form ("Parole is denied . . .") appears to be in a typeface different from the portion that precedes it.  (Compl. Ex. E).  Thus, at this stage of the proceedings, the Court must accept as true Plaintiff's contention that the Board brought to the hearing a Worksheet reflecting a predetermined decision to deny him parole.  Given that, Plaintiff's claim survives Defendant's motion to dismiss.

### 2.  Retaliation

In Count IX of his complaint, Duffy alleges that in retaliation for having filed an Article 78 proceeding in state court, he was denied a fair and impartial parole hearing in 2011.  To state a claim of retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  For the adverse action prong, the plaintiff must show that the defendant's "retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) (citations omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Duffy satisfies his burden with respect to the first prong of the First Amendment retaliation analysis — that the speech or conduct at issue was protected — because the filing of a lawsuit is a constitutionally protected activity.  *See Bounds v. Smith*, 430 U.S. 817, 821-32

(1977); *accord Amaker v. Goord*, No. 98 Civ. 3634 (JGK), 2002 WL 523371, at *14 (S.D.N.Y.

Mar. 29, 2002); *see also, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (citing

*Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)) (holding that retaliation against a prisoner for

filing a grievance is a violation of that prisoner's First Amendment right to petition the

government for redress).  Similarly, Plaintiff also satisfies the second prong by alleging that he

was denied parole in 2011 in retaliation for his state court action (*see* Compl. ¶ 24 ("It is very

apparent that the Board used the fact that plaintiff is challenging the information in the

statements as false, against plaintiff . . . .")), which sufficiently describes adverse conduct that

would deter a reasonable inmate from exercising his rights.  *See Dawes*, 239 F.3d at 493.

       Finally, although the question is close, Duffy's allegations — liberally construed — are

sufficient to support an inference of a causal relationship between his previous challenges to the

Board determinations and denial of parole.  (Compl. ¶¶ 23-24).  To be sure, the gap in time

between Duffy's state-court challenges to his earlier parole determinations and his denial of

parole in 2011 cuts against his claim.  *Cf., e.g.*, *Figueroa v. Weisenfreund*, 255 Fed. App'x 595,

597 (2d Cir. 2007) (holding that fifteen months between employee's complaints and employer's

termination of employment did not establish causal connection in a Section 1983 retaliation

claim).  Yet Duffy's allegations of prior good behavior and the crossed-out section of the

Board's Worksheet, which reads "you claim the victim's family is making false statements about

you" (Compl. Ex. E), are sufficient to survive a motion to dismiss.  The Board may well have

had a valid non-retaliatory motive for denying parole; indeed, the Board noted that public safety

concerns animated its decision.  But the question of the Board's motivation in this case is factual

and may not be decided as a matter of law at this early stage of the proceeding.

### 3.   Equal Protection Claims

Duffy also alleges that his equal protection rights were violated because he was denied parole "time after time" when other, similarly situated prisoners were granted parole, due to the false information in his file and "behind the scenes political pressure," which "caused the denials of parole release to be predetermined."  (Compl. Claim II).

Under the Equal Protection Clause, "all persons similarly situated should be treated alike."  *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  With respect to prisoners, in order to establish an equal protection violation, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which . . .  means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (internal quotation marks omitted).  If an individual cannot allege membership in a protected class, he can still prevail in a class of one equal protection claim by showing that he was "intentionally treated differently from other similarly-situated individuals without any rational basis."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).  Such a plaintiff must establish "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]" in order to succeed on an equal protection claim.  *Id.*

Significantly, however, "[a]lthough the standard for *establishing* a 'class of one' claim is extremely high, the standard for *stating* a 'class of one' claim is not onerous."  *Mathie v. Dennison*, No. 06 Civ. 3184 (GEL), 2007 WL 2351072, at *9 (S.D.N.Y. Aug. 16, 2007) (citations and internal quotation marks omitted).  To state a valid class of one claim, a plaintiff must "allege (1) that [he was] intentionally treated differently . . . and (2) that the disparate treatment was either (a) irrational and wholly arbitrary or (b) motivated by animus."  *Assoko v.*

20

*City of N.Y.*, 539 F. Supp. 2d 728, 735 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).  Such animus may include retaliatory animus.  *See, e.g.*, *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 789 (6th Cir. 2005) (noting that plaintiff's "class of one" claim could survive a motion to dismiss where it alleged that plaintiff "was similarly situated to others who received different treatment, and that his disparate treatment was motivated by invidious, retaliatory animus").  "General and relatively bare allegations that plaintiff was subjected to a different standard than that typically afforded to a similarly situated person are sufficient to meet the minimum level established for class of one claims at the pleading stage."  *Mathie*, 2007 WL 2351072, at *9 (internal quotation marks and citation omitted).

Applying those standards here, Duffy has stated a valid class of one equal protection claim.  Specifically, Duffy alleges that he was similarly situated to six other individuals who were granted parole on the same day as his 2011 hearing — all had been convicted of murder in the second degree, none had served more time than Duffy, and, according to the complaint, none had better institutional records than Duffy — and that he was denied parole in retaliation for his previous challenges to his parole denials.  (Compl. ¶¶ 17-18, 30).  Duffy may not be able to establish his claim for purposes of summary judgment or trial, as the standard for doing so is much more difficult to meet.  *See, e.g.*, *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *abrogated on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (noting that, after the pleading stage, a plaintiff must establish that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [that] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake").  But his existing allegations are sufficient at this

stage.  *See, e.g.*, *Ponterio v. Kaye*, No. 06 Civ. 6289 (HB), 2007 WL 141053, at *7 (S.D.N.Y.

Jan. 22, 2007) (denying a motion to dismiss a "class of one" claim in which the plaintiff alleged

the government was motivated by retaliatory animus); *see also Iqbal v. Hasty*, 490 F.3d 143,

157-58 (2d Cir. 2007) (finding that *Twombly* does not require a "universal standard of

heightened fact pleading," but only "some factual allegations" to "amplif[y]" the "plausib[ility]"

of a claim), *overruled on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[6]

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 14) is

GRANTED in part and DENIED in part.  The complaint plausibly alleges that the Board

predetermined Duffy's parole decision, thereby violating his right to due process, and this claim

survives Defendant's motion to dismiss.  Further, Duffy's retaliation claim — that he was denied

a fair and impartial parole hearing in retaliation for having filed an Article 78 proceeding in state

court — also survives the instant motion.  Finally, Duffy has sufficiently stated a "class of one"

equal protection claim on the ground that he was denied parole when other similarly situated

prisoners were granted parole due to the Board's retaliatory animus.

---

[6]      Insofar as Duffy claims that the alleged disparate treatment was due to "behind the scenes
political pressure" (Compl. Claim II), his claim must be dismissed.  As previously noted, adverse
political pressure is a permissible factor for the Board to consider in a parole determination, as it
relates to "whether release is not incompatible with the welfare of society and will not so
deprecate the seriousness of the offense as to undermine respect for the law."  *Krebs*, 2009 WL
2567779, at *12

The Clerk of Court is directed to terminate the aforementioned motion and to mail a copy of this Order to the Plaintiff.

SO ORDERED.

Dated: September 19, 2012
      New York, New York

                                   JESSE M. FURMAN
                             United States District Judge

Mail to:

John Duffy
No. 82-A-0783
Hudson Correctional Facility
P.O. Box 576
Hudson, NY 12534