USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/12/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN DUFFY,

                          Plaintiff,

        -v-                                              11 Civ. 7605 (JMF)

ANDREA EVANS ET AL.,                             OPINION AND ORDER

                         Defendants.
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff John Duffy, a New York State prisoner who is proceeding *pro se*, brings this action against Andrea Evans, Chairperson of the New York State Board of Parole (the "Board"), and Board Commissioners Mary Ross and James Ferguson, pursuant to Title 42, United States Code, Section 1983, alleging that his constitutional rights were violated because the Defendants repeatedly denied his application for parole release. In an Opinion and Order dated September 19, 2012 (the "September 19, 2012 Opinion"), the Court granted in part and denied in part Defendant Evans's motion to dismiss. The Court held that Duffy had plausibly alleged three claims: (1) a due process violation on the ground that the Board had predetermined the outcome of his parole hearing; (2) a retaliation claim based on the allegation that he had been denied a fair and impartial parole hearing in retaliation for having filed an Article 78 proceeding in state court; and (3) a "class-of-one" equal protection claim based on the allegation that he had been denied parole when similarly situated prisoners had been granted parole. Defendants now move for summary judgment, arguing that Duffy's claims are unsupported by the evidence. For the reasons stated below, Defendants' motion is GRANTED, and the Complaint is dismissed.

**FACTS**

The following facts, taken from the Complaint and the admissible materials submitted by the parties, are viewed in the light most favorable to Plaintiff, as he is the non-moving party. In 1981, Duffy was convicted of murder in the second degree and sentenced to an indeterminate term of imprisonment of twenty years to life. (Ross Decl. Ex. A at 16; Mausler Decl. Ex. A at 1). Although he is currently incarcerated at the Hudson Correctional Facility in Hudson, New York (Am. Compl. ¶ 1), at all times relevant to this action he was incarcerated at the Arthur Kill Correctional Facility in Staten Island, New York, and the Mid-Orange Correctional Center, located in Orange County, New York. (*Id.* ¶ 2). Duffy first appeared before the Board for a parole determination in 2001, at which point his application was denied. (Mausler Decl. Ex. G). He was subsequently denied parole in 2003, 2005, 2007, 2009, and 2011. (*Id.* Exs. B-F).

After he was denied parole in 2007, Duffy commenced an Article 78 proceeding under the New York Civil Practice Law and Rules, N.Y. C.P.L.R. 7801, *et seq.* (McKinney 2011), challenging the Board's failure to consider the minutes of his sentencing proceeding, which could not be located prior to his hearing. (Am. Compl. Ex. K). Although the Kings County Supreme Court granted Plaintiff's petition, the Appellate Division, Second Department, reversed the lower court's order, holding that "the failure of the Board to obtain and consider those minutes did not prejudice Duffy." *Matter of John Duffy v. N.Y. Div. of Parole*, 74 A.D.3d 965, 966 (N.Y. 2d Dep't 2010). In July 2009, the Board once again denied Duffy's parole application, and Duffy filed an additional Article 78 petition seeking the expungement of allegedly "false and erroneous information" contained in victim impact letters in his parole file. (Albanese Decl. Ex. B at 1). In September 2010, Judge Onofry of the Orange County Supreme

Court denied the Article 78 application, finding that Duffy's request to have the statements expunged from his file was "legally unsupportable." (*Id.* at 2).

On July 20, 2011, Duffy appeared before the Board once more — his sixth time in ten years. At the 2011 hearing, the Board noted that Duffy disputed some information provided by the victim's family contained in his parole file. (Ross Decl. Ex. A at 13:13-15:25). After the interview, Commissioners Ross and Ferguson decided to deny parole release. (Ross Decl. ¶ 4). After this determination was made, outside of Duffy's view, Ross completed a pre-printed form titled "New York State — Board of Parole — Commissioner's Worksheet." (*Id.* Ex. E; Albanese Decl. Ex. A at 42:6-16). Duffy's name and identification number were handwritten at the top of the form. (Ross Decl. Ex. E). Just below Duffy's name, in a section of the form captioned "PAROLE DECISIONS," Ross checked the box labeled "DENIED" and indicated that Duffy's next appearance would be in July 2013. (*Id.*).

The Worksheet also included the following statement, the first portion of which (Romanized below) was typed and the second portion of which (italicized below) was handwritten:

CONDITIONS OF RELEASE / REASONS FOR DENIAL

> Parole is denied. After a careful review of your record, a personal interview, and due deliberation, it is the determination of this panel that, if released at this time, there is a reasonable probability that you would not live at liberty without violating the law, and your release at this time is incompatible with the welfare and safety of the community and would so deprecate the seriousness of the crime as to show disrespect for the law [sic]

> This decision is based on the following: You stand convicted of the following serious offense *of murder 2 in which you caused the death of a 15 year old male by repeatedly stabbing him in the neck and chest. This was a heinous crime. It was completely senseless and has probably ruined the lives of many people. After it occurred, you ran and became a fugitive for about 18 months. This crime shows a complete lack of regard for human life.*

(*Id.*).  The handwritten portion also contained two crossed-out sentences, stating that Duffy "claim[s] the victim's family is making false statements about [him]."  (*Id.*).  Finally, below the passage above was the following typed sentence: "Consideration has been given to your program completion and satisfactory behavior, however your release at this time is denied."  (*Id.*).

The Board's written Decision Notice, dated July 21, 2011, included an explanation of the denial that was nearly identical to the text on the Worksheet, including that the Board based its decision on the "heinous" nature of Duffy's crime, the fact that Duffy became a fugitive after the crime, and that "if released at this time, there is a reasonable probability that [Duffy] would not live at liberty without violating the law, and [Duffy's] release at this time is incompatible with the welfare and safety of the community, and will so deprecate the seriousness of the crime as to undermine disrespect for the law."  (Ross Decl. Ex. A at 18).

Plaintiff commenced this action on October 26, 2011.  (Docket No. 2).  As noted above, in the September 19, 2012 Opinion, the Court granted in part and denied in part Defendant Evans's motion to dismiss.  (Docket No. 41).  On consent of Defendant Evans, Plaintiff filed an amended complaint on November 5, 2012, adding Commissioners Ross and Ferguson as defendants.  (Docket No. 59).  On February 22, 2013, Defendants filed their motion for summary judgment.  (Docket No. 68).[1]

---

[1]   On February 22, 2013, the Court issued a Revised Scheduling Order, directing that Defendants' motion for summary judgment remained due on February 22, 2013, but granting Plaintiff an extension of time to file any motion for summary judgment until March 22, 2013. (Docket No. 67).  Defendants filed their motion for summary judgment on February 22, 2013. Duffy filed his opposition to Defendants' motion on March 7, 2013, but did not file his own motion for summary judgment.  (Docket No. 77).  By letter dated April 4, 2013, Duffy explained that he never received a copy of the Revised Scheduling Order, assumed that he could not submit a motion for summary judgment, and therefore "threw [his] motion out."  (Docket No. 81). Duffy then requested that "once defendants file their Reply . . . the Court rule on Defendants arguments in their motion, and the arguments in [his] opposition, with no further delays."  (*Id.*).

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

---

To the extent that Duffy's letter can be construed as a request for an extension, *nunc pro tunc*, to file his own summary judgment motion, the request is moot by virtue of this Opinion and Order.

*Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support or in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).[2]

It is well established that the "special solicitude" afforded to *pro se* litigants extends to the opposition to a motion for summary judgment.  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Thus, a *pro se* party's papers opposing summary judgment are to be read liberally and interpreted to raise the strongest arguments that they suggest.  *See, e.g.*, *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y. 2011).  This special solicitude is not unlimited, however, and does not "relieve [a] plaintiff of his [or her] duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  Nor is the "duty to liberally construe a plaintiff's [opposition] . . . the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[1] [b], at 12-61 (internal quotation marks omitted)).

---

[2]   Although Rule 56 of the Federal Rules of Civil Procedure was amended and reorganized in 2010, the advisory committee notes indicate that "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note.

## DISCUSSION

### A. The Due Process Claim

Duffy first alleges that his due process rights were violated because Defendants predetermined the outcome of his July 2011 parole hearing. (Am. Compl. ¶¶ 25-26). As the Court explained in its September 19, 2012 Opinion, prisoners in New York have a limited due process right not to be denied parole arbitrarily or capriciously, or on the basis of a protected classification (such as race, religion, or gender) or an irrational distinction. *See Duffy v. Evans*, No. 11 Civ. 7605 (JMF), 2012 WL 4327605, at *7 (S.D.N.Y. Sept. 19, 2012). This guarantee against arbitrary government action includes a right to a parole hearing before a fact-finder that has not predetermined the outcome of the hearing. *Id.* at *8. In the September 19, 2012 Opinion, the Court found that Duffy had plausibly alleged that the Board predetermined the outcome of his parole hearing because a portion of the Commissioner's Worksheet — most notably, the portion that began "Parole is denied" — was typewritten and the Board did not have a typewriter or computer at the hearing. (*See* Am. Compl. ¶ 26; Ross Decl. Ex. E). The Court noted, however, that "[i]t may be that the typewritten portion is part of some pre-printed form that is not specific to Duffy, and that the Board used it only after deciding to deny parole and filled in the blank space by hand accordingly." 2012 WL 4327605, at *10.

Duffy's allegations, although sufficient to survive the motion to dismiss, are insufficient to raise a genuine issue of material fact for purposes of summary judgment. Defendants have introduced evidence that Commissioner Ross, who completed the Worksheet, routinely used three different partially pre-printed Worksheets during the course of parole hearings: a release form (Ross Decl. Ex. B), a general denial form (*id.* Ex. C), and a denial form for a case where the inmate received an Earned Eligibility Certificate (*id.* Ex. D). In a sworn declaration, Ross

7

explained that, consistent with her general practice, it was only after Duffy's parole hearing, once the Board had determined that Duffy did not meet the statutory standard for release and that his application would be denied, that she selected the appropriate form. (Ross Decl. ¶¶ 3-4). Further, according to Ross's declaration, the Board denied Duffy's application based upon the factors set forth in N.Y. Exec. Law § 259-i — specifically, "because Plaintiff killed a 15 year old boy by repeatedly stabbing him and then went into hiding for 18 months" and because of the community opposition to his release. (*See* Ross Decl. ¶¶ 4-5).[3]

      Duffy proffers no evidence whatsoever to suggest that Ross's explanation is pretextual or that the Board pre-determined the outcome of his hearing. To the contrary, he continues to rely, almost exclusively, on the fact that Ross used a partially pre-printed form stating that statutory factors. (Pl.'s Opp'n ¶ 8; *see also* Duffy Aff. ¶¶ 2, 6). But put simply, there is nothing wrong with — let alone arbitrary and capricious about — Ross's practice of recording the Board's decision using a form with boilerplate language applicable to that decision. In fact, if anything, given that the pre-printed portion of the form tracked the factors that the Board was required to consider under N.Y. Exec. Law § 259-i, it only served to ensure that the Board acted according to law and not in violation of its obligations under the Due Process Clause. Were there any doubt, the transcript of Duffy's parole hearing confirms Ross's assertion that the Board considered the statutory factors in denying his parole bid. During the hearing, the Board discussed the details and seriousness of Duffy's crime, as well as the fact that Duffy was a

---

[3]    Although Commissioner Ross completed the Worksheet, this does not suggest, as Duffy contends, that she decided to deny parole without involving Commissioner Ferguson. (*See* Pl.'s Mem. in Opp'n ¶ 9 (pointing to Ross's use of the word "I" and arguing that "according to Commissioner Ross, all Commissioner Ferguson decided was to deny plaintiff parole, not the factors as to why he was denying"). Indeed, Commissioner Ross's declaration clearly explains that "[a]fter the interview is completed, the other commissioner(s) and [Ross] deliberate and make a release decision. At that point, [Ross] select[s] the appropriate worksheet form and complete[s] it." (Ross Decl. ¶ 3).

8

fugitive for eighteen months before turning himself in to the authorities.  (Ross Decl. Ex. A at 2:20-9:14).  The Board also questioned Duffy about his institutional record (*id.* at 9:15-10:7; 11:8-12:18) and his post-release plans (*id.* at 10:8-15; 12:19-13:12).  In short, the evidence in the record establishes that the Board properly applied the Section 259-i factors to the specific facts of Duffy's application, prior to denying him release.  Because no reasonable jury could find otherwise, Defendants are entitled to summary judgment on Duffy's due process claim.

**B.  The Retaliation Claim**

Next, Duffy alleges that he was denied a fair and impartial parole hearing in 2011 in retaliation for having filed Article 78 proceedings in state court.  To state a claim of retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchack*, 389 F. 3d 379, 380 (2d Cir. 2004)).  Courts are especially skeptical of retaliation claims made by prisoners, as prisoners can so easily "claim retaliation for every decision they dislike."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *accord, e.g.*, *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).  In addition, courts in this Circuit have observed that it is generally more "difficult to establish one defendant's retaliation for complaints against another defendant," as it weakens the basis for a finding of a causal connection.  *Hare v. Hayden*, 09 Civ. 3135 (RWS), 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)).

Here, Duffy's claim founders on the third prong of the retaliation test:  the need to show a causal connection between speech and an adverse action.  To establish such a causal connection,

a court may consider a number of factors, including "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Ortiz v. City of N.Y.*, No. 12 Civ. 3118 (HB), 2012 WL 6200397, at *6 (S.D.N.Y. Dec. 12, 2012) (internal quotation marks omitted); *see also, e.g.*, *Espinal*, 558 F.3d at 129. The evidence must show more than a mere possibility that the adverse action was related in some way to protected First Amendment activity. *See, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Specifically, the plaintiff "bears the initial burden of showing that 'the protected conduct was a substantial or motivating factor in the prison officials' disciplinary decision." *Kotler v. Donelli*, 382 F. App'x 56, 57 (2d Cir. 2010) (summary order) (citing *Graham*, 89 F.3d at 79).

Applying these standards here, no rational juror could find the requisite causal connection between Duffy's protected activities and his denial of parole. As an initial matter, given the circumstances of this case, the temporal relationship between Duffy's Article 78 proceedings and his 2011 parole hearing does not suggest a causal connection. Duffy's first Article 78 petition was filed on September 5, 2007, approximately four years prior to his 2011 parole denial, and decided on appeal on June 8, 2010, more than a year prior to the July 2011 parole denial. *See Matter of Duffy v. N.Y. State Div. of Parole*, 74 A.D.3d 965, 965 (N.Y. 2d Dep't 2010). His 2009 petition was decided on September 30, 2010, ten months prior to the July 2011 hearing. (Albanese Decl. Ex. B). Even in the abstract, it is unlikely that gaps of this sort would be sufficient, by themselves, to raise an inference of causation. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (holding that a twenty-month period after the protected activity "suggests, by itself, no causality at all"); *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d

426, 447 (2d Cir. 1999) (holding that no causal connection could be inferred from a two-year gap between the protected activity and the adverse employment action); *Lioi v. N.Y.C. Dep't of Health & Mental Hygiene*, — F. Supp. 2d —, 2012 WL 6625271, at *18 (S.D.N.Y. Dec. 19, 2012) (holding that "the temporal nexus — 10 months — is insufficient to establish a causal connection"); *see also, e.g.*, *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (holding that the defendants were entitled to summary judgment where the only circumstantial evidence of retaliation was plaintiff's prior good prison record and the temporal proximity between his grievance and the alleged adverse action). When considered in conjunction with the fact that Duffy comes up for parole every two years, the temporal relationship between the 2011 parole decision and his litigation arising from the earlier parole denials is even less noteworthy.

       The other factors point even more strongly toward the absence of any causal connection between Duffy's protected activity and the denial of parole. First, the Board's treatment of Duffy in 2011 was consistent with its treatment of him even before he filed his Article 78 proceedings. That is, the Board's denial of parole in 2011 was consistent with its denial of parole in 2001, 2003, 2005, and 2007, which were — by definition — unconnected to Duffy's pursuit of the Article 78 proceedings. *Cf. Spies v. Kelleher*, 151 F. App'x 72, 73 (2d Cir. 2005) (holding that the plaintiff "failed to show a material issue of fact on the issue of causation" because "[d]efendant wrote poor evaluations for plaintiff before and after the filing of his grievance"); *Bouknight v. Shaw*, No. 08 Civ. 5187 (PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding that the defendant's consistent treatment of plaintiff before and after the allegedly protected speech indicated that the protected speech was not a substantial cause of the adverse action). Second, Duffy's Article 78 proceedings did not challenge the conduct of either Ross or Ferguson and were unsuccessful in any event, reducing any incentive Ross or Ferguson

11

would have had to seek retaliation against Duffy.  *See, e.g.*, *Wright*, 554 F.3d at 274 (dismissing retaliation claim against a corrections officer when the only alleged basis for retaliation was the plaintiff's complaint about a prior incident by another corrections officer); *Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *8 (S.D.N.Y. Mar. 26, 2013) ("In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, courts may consider . . . vindication at a hearing on the matter" (internal quotation marks omitted)).  Finally, Duffy has not produced any statements by Defendants, let alone other evidence, suggesting that Defendants acted with a retaliatory motive.  There was no discussion of Duffy's Article 78 petitions at the 2011 parole interview (Ross Decl. Ex. A), and no mention of them in either Duffy's Inmate Status Report (Mausler Decl. Ex. A), or the Commissioner's Worksheet (Ross Decl. Ex. E).  Although Ross's Worksheet contained a crossed-out sentence reading "[y]ou state that the victim's family is making false statements about you" (*id.*; *see also* Ross Decl. Ex. A at 14:9-15:25 (discussing the false statements at the parole hearing)), no reasonable juror could infer from that fact that the Board's decision to deny Duffy parole was motivated by his Article 78 petition on the same subject especially given that the Board was statutorily required to consider victim impact statements as part of its evaluation.  *See* N.Y. Exec. Law. § 259-i(2)(c)(A).

## C.  The Class-of-One Claim

Finally, Duffy argues that the Board violated the Equal Protection Clause by denying him parole and granting it to others similarly situated.  A class-of-one claim "exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000) (per curiam)).  In order to prevail on a class-of-one claim, therefore, a plaintiff must establish an "extremely high" level of similarity with someone treated differently, such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and no juror could find "that the defendants acted on the basis of a mistake."  *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (internal quotation marks omitted).  Further, a plaintiff must "show, not only 'irrational and wholly arbitrary' acts, but also intentional disparate treatment."  *Giordano v. City of N.Y.*, 274 F.3d 740, 751 (2d Cir. 2001) (quoting *Olech*, 528 U.S. at 564).

These standards are hard to meet in the parole context, given the degree of discretion granted to the Board in such matters.  *See, e.g.*, *Siao-Pao v. Connolly*, 564 F. Supp. 2d 232, 244 (S.D.N.Y. 2008) ("[T]he number and variety of factors bearing on the seriousness of the underlying offense and the likelihood that an offender will be a danger to the community make it impossible to conclude, on the bases of the sketchy data presented, that petitioner has been singled out from among all homicide offenders for disparate treatment." (quoting *Brown v. Thomas*, No. 02 Civ. 9257 (GEL), 2003 WL 941940 (S.D.N.Y. March 10, 2003)).  In any event, Duffy does not even come close to meeting them.  Duffy alleges that he was similarly situated to six other individuals who were granted parole on the same day as his 2011 hearing.  (Am. Compl. ¶ 30).  Yet of these six individuals, five had shorter sentences than Duffy (Mausler Decl. Ex. H), and the one individual who had a longer sentence had different programming, different institutional accomplishments, and a different disciplinary history than Plaintiff (*id.*).  Thus, none of these individuals was "so similar [to Duffy] that no rational person could see them as different," *Ruston*, 610 F.3d at 60, and Duffy has failed to offer any evidence to demonstrate that

the Board intentionally discriminated against him. Further, of the eighteen prisoners convicted of homicide who were interviewed at the Mid-Orange Correctional Facility in July 2011, eleven others were denied release. (Mausler Decl. ¶ 5). Thus, the evidence suggests that Duffy was treated no differently than most of the prisoners brought up for parole on the date in question; it certainly does not support that he was treated arbitrarily, irrationally, or unfairly when compared with the other prisoners. *See, e.g.*, *Germenis v. N.Y.S. Dep't of Corr. Servs.*, No. 08 Civ. 8968 (GEL), 2009 WL 2877646, at *5 (S.D.N.Y. Sept. 9, 2009) (denying plaintiff's class-of-one claim in light of the "high degree of similarity required for such a claim" and "the myriad of variables involved in parole decisions"); *Manley v. Thomas*, 255 F. Supp. 2d 263, 268 (S.D.N.Y. 2003) (denying plaintiff's class-of-one claim because there was no evidence that plaintiff was "subjected to irrational and wholly arbitrary acts and intentional disparate treatment" from other prisoners (internal quotation marks omitted)).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED. The Clerk of Court is directed to terminate the motion (Docket No. 68), to close this case, and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: July 12, 2013
       New York, New York

_____
JESSE M. FURMAN
United States District Judge